**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on November 10, 2016, which may be different from its entry on the record.**

**IT IS SO ORDERED.**

**Dated: November 10, 2016**



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 16-11784 |
| | ) | |
| ANTHONY W. ROBERSON & | ) | Chapter 7 |
| JOI N. ROBERSON, | ) | |
| | ) | Judge Arthur I. Harris |
| Debtors. | ) | |

MEMORANDUM OF OPINION[1]

This case is currently before the Court on the debtors' Motion for Sanctions for Violation of the Automatic Stay (Docket No. 13) stemming from the creditor GCB Properties III, Ltd. threatening an eviction action as well as making related collection efforts against the debtors in violation of the automatic stay. For the reasons that follow, the Court orders GCB Properties III, Ltd. to pay the debtors attorney's fees in the amount of $1,680, but denies the debtors' request to award

---

[1] This Opinion is not intended for official publication.

noneconomic and punitive damages.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order 2012-7 of the United States District Court for the Northern District of Ohio.

## PROCEDURAL HISTORY

On April 1, 2016, the debtors filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code. On June 28, 2016, the debtors filed a Motion for Sanctions for Violation of Automatic Stay (Docket No. 13) alleging that creditor GCB Properties III, Ltd. dba Cleveland Real Estate Pros.com threatened an eviction action and made related collection efforts against the debtors in violation of the automatic stay. GCB Properties III, Ltd. did not respond to the motion or attend the hearing scheduled for July 26, 2016. At the hearing, the Court asked the debtors to file a supplement to their motion detailing their damages, which the debtors filed on August 2, 2016. (Docket No. 21).

In an order dated August 9, 2016, the Court gave the creditor until August 26, 2016, to file a response to the debtors' supplement and gave both parties until September 2, 2016, to request an evidentiary hearing.

(Docket No. 22).  On August 26, 2016, GCB Properties III, Ltd. filed a Reply and Objection to the Debtors' Motion for Sanctions (Docket No. 24).  In its reply GCB Properties III, Ltd. conceded that some of its actions violated the automatic stay but disputed that it had notice of the debtors' bankruptcy filing at the time of the violations and that the debtors suffered any resulting damages.  On August 26, 2016, the debtors timely requested an evidentiary hearing, which the Court held on October 11, 2016.  The Court heard testimony from the debtor Joi Roberson and the creditor's Director of Ohio Operations, Karen L. Farrell.  The Court also received without objection Plaintiffs' Exhibits 1 through 12 and Defendant's Exhibits A through L.

## FINDINGS OF FACT

The findings of fact contained in this Memorandum of Opinion reflect the Court's weighing of the evidence, including credibility of the witnesses.  "In doing so, the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language, or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005).  Even if not specifically mentioned in this decision, the Court considered the testimony of all the trial witnesses, exhibits admitted into evidence, and any stipulations.  Unless

3

otherwise indicated, the following facts were established at trial by a preponderance of the evidence.

On or about December 30, 2014, the debtors, Joi and Anthony Roberson, entered into a lease with Catherine Troy for property at 4198 W. 62nd Street, Cleveland, Ohio, for rent of $897 per month. (Pl.'s Ex. 12; Def.'s Ex. B). Pursuant to the lease, Real Estate Pros.com acted as the management company, and all rent payments were to be made to Real Estate Pros.com at 6100 Oak Tree Boulevard, Suite 217, Independence, Ohio. "Real Estate Pros.com" is a certified fictitious name of GCB Properties III, Ltd. (Def.'s Ex. D). However, several email communications and Real Estate Pros.com's website name reference either "Cleveland Real Estate Pros" or "www.clevelandrealestatepros.com." (Pl.'s Exs. 2, 3,4, and 7; Def.'s Exs. F and H).

Initially, Joi Roberson contacted Real Estate Pros.com by phone, email, and through the creditor's online "portal," which was a website that had rent payment and maintenance request functions. Because Joi Roberson had difficulty successfully contacting Real Estate Pros.com by phone and email, she started using the maintenance request function of the online portal to communicate with Real Estate Pros.com.

At some point after entering the lease, the debtors started having problems

4

with their apartment. Specifically, the debtors could not get possession of the keys to the front door, and their water was shut off. The debtors' water was first shut off in approximately August of 2015, and the debtors paid $954 to have their water service reinstated even though there was some dispute as to whether the debtors or their landlord was liable for this payment. Up until that point, all of the water bills that arrived at the debtors' apartment were addressed to Catherine Troy. The debtors did not pay any of these bills or forward them to Catherine Troy or Real Estate Pros.com. The debtors tried calling either Catherine Troy or Real Estate Pros.com about these bills but did not receive any return calls. Approximately three weeks after the debtors paid the initial $954 to have their water service reinstated, the debtors' water service was shut off again.

In December 2015, the debtors and the creditor signed a renewal of their lease through January 2017. The debtors received a Notice to Leave Premises on or about February 10, 2016. (Pl.'s Ex. 1). The debtors continued to dispute their liability for the water bill and attempted to negotiate with Real Estate Pros.com, including through one of the creditor's managers, Samantha Simmons. Joi Roberson sent an email to Samantha Simmons on March 19, 2016, continuing to dispute the debtors' liability for the water bill. (Pl.'s Ex. 2). Around this time, the debtors also attempted to contact Real Estate Pros.com through telephone calls,

5

voice messages, and by visiting the Real Estate Pros.com office at 6100 Oak Tree Blvd, Suite 200, Independence, Ohio.  The Real Estate Pros.com office in Independence, Ohio, is located within a building that houses multiple offices, not just those of Real Estate Pros.com.  The debtors did not immediately receive a reply to these communications.

On April 1, 2016, the debtors met with their bankruptcy attorney and filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code at approximately 3:16 P.M.  Although the debtors had other debts, the debtors' main reason for filing bankruptcy at that time was their inability to pay rent and to communicate with their landlord about this issue.  The debtors listed a disputed unsecured claim of "Cleveland Real Estate Pros" in the amount of $4,103 for "Rent" on their Schedule E/F.  The debtors also listed their residential apartment lease with "Cleveland Real Estate Pros" on their Schedule G and indicated in their Statement of Intention that this lease would not be assumed.  On both their Schedules E/F and G the debtors listed Cleveland Real Estate Pros' address as "6100 Oak Tree Blvd., Suite 200, Independence, OH 44131."  Notice by first class mail of the debtors' Chapter 7 bankruptcy case was sent by the Bankruptcy Noticing Center to "Cleveland Real Estate Pros" at the 6100 Oak Tree Blvd., Suite 200, Independence, OH address on April 7, 2016.  (Docket No. 6).

6

The parties disagreed at trial as to whether service of the notice of debtors'

bankruptcy at the 6100 Oak Tree Blvd., Suite 200, Independence, OH, address was

sufficient to put Real Estate Pros.com on notice of the debtors' bankruptcy.  Karen

L. Farrell, GCB Properties III, Ltd.'s Director of Ohio Operations, testified that

she searched the records of Real Estate Pros.com and that she could not find any

record of the debtors' bankruptcy until early August 2016, when Real Estate

Pros.com received notice from the debtors' attorney and/or the Court of the

debtors' motion for sanctions.  To support its argument that it did not receive

proper notice of the debtors' bankruptcy prior to early August 2016, Real Estate

Pros.com relied on language in the debtors' rental agreement that states that "[a]ny

notice by either party shall be in writing and shall be deemed to be duly given if

delivered personally or sent by ordinary mail in a post paid envelope addressed to

addresses set forth above or at such other addresses as Landlord or Tenant,

respectively, may designate in writing."  (Def.'s Ex. B).  The only address set forth

in the rental agreement for Real Estate Pros.com is "6100 Oak Tree Blvd Suite

217, Independence, OH 44131."  *Id*.  The differences between this address and the

address to which the Bankruptcy Noticing Center mailed the notice of the debtors'

bankruptcy are: (1) the suite number, "217" as opposed to "200," and (2) the

organization name, "Real Estate Pros.com" as opposed to "Cleveland Real Estate

7

Pros." However, Karen Farrell did not dispute that Real Estate Pros.com could be reached at Suite 200, which is the building's reception desk, and that anything mailed to Suite 200 would be received by Real Estate Pros.com. Additionally, emails from Samantha Simmons to the debtors and the February 10, 2016, Notice to Leave Premises identify "Suite 200" as the address for Cleveland Real Estate Pros.com. Finally, the notice mailed by the Bankruptcy Noticing Center on April 7, 2016, to the Suite 200 address has not been returned as undeliverable.

At approximately 2:37 P.M. on April 1, 2016 – the same day the debtors signed their bankruptcy petition – Samantha Simmons sent an email to Joi Roberson stating that the debtors were delinquent in paying their "full balance according to the terms of [the debtors'] lease" and that the debtors were being evicted. (Pl.'s Ex. 2). The signature line of the email from Samantha Simmons listed the name "Cleveland Real Estate Pros" as well as a phone number and website, "www.clevelandrealestatepros.com." *Id.* After receiving this email, Joi Roberson testified that her husband, co-debtor Anthony Roberson, called Samantha Simmons and left a voice message indicating that the debtors were in bankruptcy along with instructions to contact their bankruptcy attorney with any questions.

Real Estate Pros.com disputes that it received a phone call from the debtors

8

on April 1, 2016. Karen Farrell testified that Real Estate Pros.com's telephone system is linked to email and that all calls are recorded and emailed to a general email address for Real Estate Pros.com. Karen Farrell also testified that these records are retained indefinitely and that there was no record of a phone call from either of the debtors' phone numbers to Real Estate Pros.com's general Cleveland phone number on April 1, 2016. However, Karen Farrell also testified that company policy is not always followed and Samantha Simmons no longer works for Real Estate Pros.com due to, in part, insubordination. Based on this, Karen Farrell admitted it is possible that the debtors reached out to Samantha Simmons, but that Samantha Simmons did not reply. Although Karen Farrell testified that any message left on the phone system would have been recorded and retained independent of any action by Samantha Simmons, Karen Farrell has no independent knowledge of whether the phone system was working on April 1, 2016. Furthermore, Karen Farrell testified that she only checked the system for phone calls made to Real Estate Pros.com's general Cleveland number from the two phone numbers that she had on file for the debtors, and for the date of April 1, 2016. If the debtors called from a phone number other than the two on file, on a date other than April 1, 2016, or if the debtors did not call Real Estate Pros.com's general Cleveland number, Karen Farrell's record search would not

9

have uncovered a record of the debtors' call.

It is unclear to the Court whether Anthony Roberson called the landlord on April 1, 2016, and whether the notice of the debtors' bankruptcy sent by the Bankruptcy Noticing Center was actually received by Real Estate Pros.com. Weighing the aforementioned evidence, including the credibility of the witnesses, the Court finds by a preponderance of the evidence that Real Estate Pros.com, through its agents, had knowledge of the debtors' bankruptcy no later than April 1, 2016.

Additionally, the Court finds that it is more likely than not that the notice of the debtors' bankruptcy mailed by the Bankruptcy Noticing Center on April 7, 2016, was, in fact, received by Real Estate Pros.com. Although the DBA "Cleveland Real Estate Pros" is not a certified fictitious name for GCB Properties III, Ltd., the name "Cleveland Real Estate Pros" was used in emails from Samantha Simmons to the debtors and in the creditor's website address www.clevelandrealestatepros.com. Given the similarity between "Real Estate Pros.com" and "Cleveland Real Estate Pros," and the use of "Cleveland Real Estate Pros" in the creditor's regular course of business, it is unlikely that this difference would have prevented effective service. The distinction between "Suite 200" and "Suite 217" is similarly unlikely to have prevented service. First, the

10

lease indicated that notice could be given ". . . at such other addresses as Landlord . . . may designate in writing." The use of the "Suite 200" address in the emails and Notice to Leave Premises qualified as such a written designation. Second, Karen Farrell testified that a notice sent to the "Suite 200" address would have been received by Real Estate Pros.com.

On April 2, 2016, Joi Roberson emailed Samantha Simmons stating a desire to go to court. On April 5, 2016, Real Estate Pros.com issued a second Notice to Leave Premises to the debtors (Def.'s Ex. G), and Samantha Simmons sent an email to Joi Roberson stating, in part, "[s]ubmit full payment to avoid going to court and more expenses." (Def.'s Ex. F). Joi Roberson responded to Samantha Simmons's email stating "[w]e have a Lawyer so we will see you all in court." (Def.'s Ex. F). Neither Joi Roberson's April 2, 2016, email nor April 5, 2016, email to Samantha Simmons mentioned that the debtors filed for bankruptcy. *Id.* Karen Farrell testified that company policy was for any email that mentioned a legal proceeding or an attorney to be forwarded to her, but that this process in this case would have relied on the discretion of Samantha Simmons. Furthermore, Karen Farrell testified that Real Estate Pros.com will move forward with collection efforts if a nonpaying tenant only mentions an attorney but does not provide the attorney's contact information.

On April 27, 2016, the debtors received another email from Samantha Simmons. (Pl.'s Ex. 3). Among other things, the email stated that the debtors were "on the IMMEDIATE precipice of eviction" and that the debtors' "inability and/or refusal to pay" was damaging the finances of the landlord. The email stated that if the debtors failed to "respond AND move within no more than 7 days of this message," then Real Estate Pros.com would "take ALL actions available under the law which will include eviction and eventual wage garnishment. To elaborate, [Real Estate Pros.com] will pursue a legal remedy for all the money you owe the owner plus all turnover costs plus any lost rent plus any recoverable legal fees; the damages to the owner are significant." *Id.* The signature line of this email included all of the same information as the April 1, 2016, email, except the April 27, 2016, email also included the "6100 Oak Tree Blvd. Suite 200, Independence, OH 44131" address. *Id.* The debtors forwarded the April 27, 2016, email to their attorney, but did not respond to this contact from Real Estate Pros.com in any way. Joi Roberson received another email from Real Estate Pros.com on April, 28, 2016, requesting payment of the rent due May 1, 2016. (Pl.'s Ex. 4). Other than these emails, the debtors did not receive any phone calls or text messages from Real Estate Pros.com requesting payment, nor were any of the debtors' neighbors contacted by Real Estate Pros.com requesting payment.

12

On or about June 20, 2016, the debtors received a "Notice to Leave Premises" from "ColumbusRealEstatePros.com" with a return address of 670 - A Enterprise Dr., Lewis Center, OH 43035. (Pl.'s Ex. 5). "Columbus Real Estate Pros.com" is a certified fictitious name for GCB Properties III., Ltd. (Def.'s Ex. D). At some point, the debtors also received a letter, dated June 25, 2016, from an attorney attempting to collect payment for GCB Properties III, Ltd. dba Real Estate Pros.com. (Pl.'s Ex. 6).

The debtors received their discharge on July 13, 2016. Real Estate Pros.com filed an eviction action against the debtors on July 28, 2016, but this action was voluntarily dismissed without prejudice by Real Estate Pros.com on August 22, 2016. (Def.'s Ex. K).

Joi Roberson testified that the conflict between the debtors and Real Estate Pros.com was troubling for both of the debtors. Specifically, Joi Roberson testified that she was worried about not having anyplace to stay as well as her ability to care for her small children if the water service was cut off. Joi Roberson also testified that she felt threatened by Real Estate Pros.com's postpetition collection efforts and that she incurred legal fees in the amount of $1,680 to address the conflict with Real Estate Pros.com. (Pl.'s Ex. 11). Joi Roberson also testified that the debtors had to pay "a ton of money out of pocket to move" and

13

that both debtors had to attend housing court for a few hours regarding the eviction, even though they were later informed that the case was dismissed. The debtors eventually moved out of that premises at 4198 W. 62nd St., Cleveland, Ohio, on September 30, 2016. The debtors paid no rent from April 1, 2016, through September 30, 2016.

## DISCUSSION

The Court may impose damages for violations of the automatic stay under 11 U.S.C. § 362. The filing of a bankruptcy petition gives rise to the automatic stay. The automatic stay prohibits "any act to obtain possession of property of the estate or . . . to exercise control over property of the estate . . . [or] to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(3) and (6). Subsection 362(k)(1) (formerly subsection 362(h) prior to the 2005 bankruptcy amendments) provides:

> . . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

A creditor willfully violates the stay if the creditor knows of the stay and violates the stay with an intentional act. *See In re Sharon,* 234 B.R. 676, 687-88 (B.A.P. 6th Cir. 1999); *In re Grine*, 439 B.R. 461, 466 (Bankr. N.D. Ohio 2010).

14

"A 'willful violation' does not require proof of a specific intent to violate the stay, but rather 'an intentional violation by a party aware of the bankruptcy filing.' " *In re Baer*, Adv. No. 10-2062, 2011 WL 3667511, at *4 (Bankr. E.D. Ky. Aug. 22, 2011) (quoting *In re Sharon*, 234 B.R. at 687).

Under 11 U.S.C. § 362(k)(1), the individual seeking damages has the burden of establishing three elements by a preponderance of the evidence:  (1) the actions taken were in violation of the automatic stay; (2) the violation was willful; and (3) the violation caused actual damages.  *See In re Collett*, No. 13-8033, 2014 WL 2111309, at *4 (B.A.P. 6th Cir. May 21, 2014) (citations omitted).  *See also In re Pawlowicz,* 337 B.R. 640, 646 (Bankr. N.D. Ohio 2005); *In re Swartzentruber*, No. 13-61147, 2014 WL 2930450, at *1 (Bankr. N.D. Ohio June 27, 2014).  Under § 362(k), damages must be proven with reasonable certainty and cannot be based on conjecture or speculation.  *See Archer v. Macomb County Bank*, 853 F.2d 497, 499-500 (6th Cir. 1988).  As the party seeking damages, the debtor has the burden of proving entitlement to damages.  *In re Sharon*, 234 B.R. at 687.

The Court must decide: (1) whether the creditor's actions constitute a violation of section 362; (2) if the creditor has violated section 362, whether such violation was willful; and (3) whether the debtor is entitled to damages, including

attorney's fees.

## THE CREDITOR'S ACTIONS VIOLATED THE AUTOMATIC STAY UNDER 11 U.S.C. § 362

The Court's first inquiry is whether the creditor's actions violated the automatic stay. The filing of the debtor's voluntary petition stayed "any act to obtain possession of property of the estate or . . . to exercise control over property of the estate . . . [or] to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(3) and (6). The debtors assert – and GCB Properties III, Ltd. concedes – that GCB Properties III, Ltd. violated the automatic by sending emails that attempted to collect the prepetition debt and threatening eviction. Here, the automatic stay arose when the debtors filed their bankruptcy petition, at 3:16 P.M. on April 1, 2016, and continued as to actions against the debtors until the debtors received their discharge on July 13, 2016. 11 U.S.C. § 362(a) and (c). During this time, GCB Properties III, Ltd. or its agents (1) caused a Notice to Leave Premises to be delivered to the debtors on or about April 5, 2016; (2) sent an email to Joi Roberson attempting to collect a prepetition debt on April 5, 2016; (3) sent an email to Joi Roberson attempting to collect a prepetition debt on April 27, 2016; (4) caused a Notice to Leave Premises to be delivered to the debtors on or about

16

June 20, 2016; and (5) engaged an attorney who sent a collection letter for prepetition debts to the debtors on or about June 25, 2016. The debtors have shown by a preponderance of the evidence that these actions violated the automatic stay by attempting to obtain possession of property of the estate, exercise control over property of the estate, or collect, assess, or recover a claim against the debtor that arose before the commencement of the case.

*THE CREDITOR'S VIOLATIONS OF THE STAY WERE "WILLFUL"*

"A violation of the automatic stay can be willful when the creditor knew of the stay and violated the stay by an intentional act." *In re Sharon,* 234 B.R. at 687. "As used in [current subsection 362(k)], 'willful,' unlike many other contexts, does not require any specific intent." *In re Bivens*, 324 B.R. 39, 42 (Bankr. N.D. Ohio 2004). *See In re Sharon*, 234 B.R. at 687-88 (creditor's belief that its action would not violate stay does not preclude a finding that creditor's action was "willful" within meaning of section 362(k)). *See also Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir. 1993); *Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.),* 977 F.2d 826, 829 (3d Cir. 1992). The debtor bears the burden of establishing by a preponderance of the evidence that the violation of the automatic stay was willful. *See In re Johnson,* 501 F.3d 1163, 1172 (10th Cir. 2007).

17

A creditor's violation of the stay can also be willful if the debtor puts the creditor's agent on notice of the debtor's bankruptcy, but the agent fails to forward the information to the appropriate personnel. Otherwise, a creditor could avoid or at least delay its obligations under the automatic stay simply by being difficult to reach or by failing to make sure that notice of the debtor's bankruptcy reaches the appropriate personnel. "[D]elays with the corporate-creditor ceasing its collection activities often occur" when, as here, the creditor has multiple offices and agents who could be notified of the debtors' bankruptcy. *In re Perviz*, 302 B.R. 357, 366-67 (Bankr. N.D. Ohio 2003). Although this may, "in the very short term mitigate against the existence of a 'willful' violation of the stay," the creditor is still responsible for ensuring that "formal bankruptcy notices sent to an internally improper, but otherwise valid corporate address are forwarded in a prompt and timely manner to the correct person/department." *Id.* at 367. *Cf. Gourlay v. Sallie Mae, Inc. (In re Gourlay)*, 465 B.R. 124, 130 (B.A.P. 6th Cir. 2012) (no excusable neglect to set aside default judgment under Rule 60(b) where defendant's lack of minimum internal safeguards was at least a partial cause of failure to respond). Additionally, "the notice of the debtor's bankruptcy 'does not need to be formal, so long as the facts would cause a reasonably prudent person to make additional inquiry.'" *In re Swartzentruber*, No. 13-61147, 2014 WL 2930450, at *2 (Bankr.

18

N.D. Ohio June 27, 2014) (quoting *In re Stewart*, 499 B.R. 557, 571 (Bankr. E.D. Mich. 2013)).  *See also Perviz*, 302 B.R. at 367-68 (to act willfully, creditor need only receive actual, not formal, notice).

In this case, GCB Properties III, Ltd. received actual notice of the debtors' bankruptcy filing when Anthony Roberson called Real Estate Pros.com on April 1, 2016, and left a voice message that included information about the debtors' bankruptcy and contact information for the debtors' bankruptcy attorney. Such a voice message would surely cause a reasonably prudent creditor to make additional inquiry.  Indeed, Karen Farrell testified that employees at GCB Properties III, Ltd. were instructed to forward her any information that mentioned a bankruptcy filing.  GCB Properties III, Ltd. remains responsible for any breakdowns in its system that lead to violations of the automatic stay.  *Perviz*, 302 B.R. at 367.  Accordingly, all five of GCB Properties III, Ltd.'s violations of the automatic stay were willful.  Furthermore, even if Anthony Roberson had not made the April 1, 2016, phone call, three of GCB Properties III, Ltd.'s stay violations would still be willful by virtue of the notice of the debtors' bankruptcy mailed by the Bankruptcy Noticing Center to GCB Properties III, Ltd. on April 7, 2016.

19

*THE DEBTORS ARE ENTITLED TO ACTUAL DAMAGES FOR THE*
*CREDITOR'S WILLFUL VIOLATIONS OF THE AUTOMATIC STAY*

An award of actual damages is mandatory if the stay violation is willful.

*In re Bivens*, 324 B.R. at 42; *In re Johnson,* 253 B.R. 857, 861 (Bankr. S.D. Ohio

2000). *See United States v. Harchar*, 331 B.R. 720, 724 (N.D. Ohio 2005) (costs

and attorney's fees are included as actual damages for violation of the stay);

*In re Sharon*, 234 B.R. at 687-88 (upholding a bankruptcy court's imposition of

damages against a creditor for violation of the automatic stay). However, an

award must be reasonable and supported by the evidence. *Archer*, 853 F.2d

at 499. Moreover, the debtor carries the burden of "requesting damages in a

certain amount and of supporting that claim with evidence" when seeking

damages under § 362(k). *In re Baer*, No. 11-8062, 2012 WL 2368698, at *10

(B.A.P. 6th Cir. June 22, 2012) (table).

In the present case, the creditor willfully violated the automatic stay when it

(1) caused a Notice to Leave Premises to be delivered to the debtors on or about

April 5, 2016; (2) sent an email to Joi Roberson attempting to collect a prepetition

debt on April 5, 2016; (3) sent an email to Joi Roberson attempting to collect a

prepetition debt on April 27, 2016; (4) caused a Notice to Leave Premises to be

delivered to the debtors on or about June 20, 2016; and (5) engaged an attorney

20

who sent a collection letter for prepetition debts to the debtors on or about June 25, 2016. Thus, the debtors are entitled to actual damages, including costs and attorney's fees, resulting from the creditor's willful violation of the automatic stay.

During the hearing, Joi Roberson testified that, in addition to attorney's fees, she and her husband incurred moving costs and had to attend housing court on one occasion. Joi Roberson did not testify as to a specific amount for moving expenses or damages for attending court. Given the lack of specificity relating to the amount of these damages, the Court finds that the debtors did not meet their burden of proving damages for moving expenses or court attendance. In addition, these actions appear to have come after the debtors received their discharge and the automatic stay had terminated with respect to actions against the debtors. Nor is it clear that moving expenses would constitute damages under section 362(k) given the debtors' stated intent to not assume the unexpired lease.

Section 362(k) authorizes an award of attorney's fees reasonably incurred to remedy a stay violation, including fees incurred in prosecuting the damages action that § 362(k) authorizes. *In re Schwartz-Tallard*, 803 F.3d 1095, 1099 (9th Cir. 2015) (en banc); *In re Repine*, 536 F.3d 512, 522 (5th Cir. 2008); *In re Duby*, 451 B.R. 664, 674-77 (B.A.P. 1st Cir. 2011). The debtors seek

21

attorney's fees in the amount of $1,680 (5.6 hours at an hourly rate of $300)

stemming from the evidentiary hearing, the motion for sanctions, and related

research and preparation.  (Docket No. 21).

Even if the debtors suffered actual damages in the form of attorney's fees,

they may not be recoverable if the attorney did not take steps to mitigate damages.

Debtors and their attorneys are under an obligation " '. . . to attempt to mitigate

damages *prior to seeking court intervention*.' "  *In re Schang*, No 14-51178,

2015 WL 3441178, at *3 (E.D. Mich. May 28, 2015) (quoting *In re Oksentowicz*,

324 B.R. 628, 630 (Bankr. E.D. Mich. 2005)).  *See also In re Jean-Francois*,

516 B.R. 699 (E.D.N.Y. 2014) (a debtor must exercise due diligence in mitigating

damages for a creditor's violation of the automatic stay).  During the evidentiary

hearing held in *Schang*, the bankruptcy court asked debtor's attorney what

attempts he had made to contact the creditor when he first learned that the creditor

may have been violating the automatic stay.  Specifically, the court inquired

whether debtor's attorney made a simple phone call, sent an email, or mailed a

letter to the creditor.  Because the debtor did not take any of these steps and

instead "just jumped into [filing the] motion [for sanctions]," the court found that

the debtor failed to mitigate damages.  *Schang*, 2015 WL 3441178, at *3.  The

duty to mitigate reflects the sound judicial policy that profit-making from

22

violations of the automatic stay is "inherently improper." *In re Duling*,

360 B.R. 643, 645-47 (Bankr. N.D. Ohio 2006). *See* Fed. R. Bankr. Proc. 9011

(prohibiting any action brought for "any improper purpose, such as . . . needless

increase in the cost of litigation").

This policy is analogous to the doctrine of avoidable consequences, which

provides that "the person who stubbornly refuses to protect his own interests is

given no legal redress." Restatement (Second) of Torts § 918 cmt. a (1979).

*See also* Restatement (Second) of Contracts § 350 (1981). For example, the victim

of an intentional tort is "entitled to damages only for the pain, loss of earnings and

other elements of damages that [he] would have suffered if he had used reasonable

care." Restatement (Second) of Torts § 918 cmt. a, illus. 1 (1979).

In the present case, the debtors spoke with their bankruptcy attorney on

several occasions from April 2, 2016, through June 28, 2016 – the date the motion

for sanctions was filed. During this time period, the debtors also forwarded to

their bankruptcy attorney several emails and notices sent to the debtors from GCB

Properties III, Ltd. Although GCB Properties III, Ltd.'s contact information was

contained in the forwarded emails and notices, the debtor's bankruptcy attorney

did not reach out to GCB Properties III, Ltd. during this time period. Instead, the

debtors' attorney relied on the Bankruptcy Noticing Center and the debtors

themselves to inform GCB Properties III, Ltd. of the debtors' bankruptcy.

In another context, the failure of the debtors' attorney to contact the creditor directly may result in a smaller award for "reasonable" attorney's fees. *Cf. In re Jennifer L. Docherty*, Case No. 15-14124, 2016 WL 675835 (Bankr. N.D. Ohio Feb. 18, 2016). In this case, however, direct contact from the debtors' attorney is unlikely to have mitigated damages. GCB Properties III, Ltd. failed to respond to the motion for sanctions filed by the debtor's attorney or attend the hearing on July 26, 2016. This is true even though the debtors' attorney sent notice by U.S. Mail on June 28, 2016, to both "Cleveland Real Estate Pros.com, 6100 Oak Tree Boulevard, Suite 200, Independence, OH 44131" and GCB Properties III, Ltd.'s business address on file with the Ohio Secretary of State, "GCB Properties III, Ltd., 670 Enterprise Dr., Suite A, Lewis Center, OH 43035." (Docket No. 14; Def.'s Ex. D). This notice was presumably delivered to both addresses. *Cf. Carroll v. Commissioner of Internal Revenue*, 71 F.3d 1228, 1231 (6th Cir. 1995) (quoting *Rosenthal v. Walker*, 111 U.S. 185 (1884) (absent proof of irregularity, properly mailed document is presumed actually received by addressee)). Given GCB Properties III, Ltd.'s failure to respond even to a motion for sanctions that was filed with the Court, the Court cannot conclude that direct contact from the debtors' attorney would have mitigated damages. In light of all of the above

24

circumstances, the attorney's fees itemized in the debtors' fee application appear to be reasonable. Therefore, the Court awards the debtors' $1,680 in attorney's fees.

*THE DEBTORS ARE NOT ENTITLED TO NONECONOMIC DAMAGES*

The Court notes that there is some controversy as to whether emotional damages can be recovered under § 362(k). *Compare In re Cousins*, 404 B.R. 281, 290 (Bankr. S.D. Ohio 2009) ("[T]here is some question as to whether emotional damages are compensable under § 362(k)."), *and Harchar*, 331 B.R. at 728 (N.D. Ohio 2005) (noting circuit split but holding that emotional damages are not compensable for violations of the automatic stay), *with Bankers Healthcare Grp., Inc. v. Bilfield (In re Bilfield)*, 494 B.R. 292, 303-04 (Bankr. N.D. Ohio 2013) (noting circuit split but opining in dicta that "emotional distress damages are actual damages that can be recovered for a stay violation"). *See also Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263, 1269-71 (11th Cir. 2014) (discussing split among circuit courts and concluding that emotional distress damages are compensable under § 362(k)). However, this split of authority is irrelevant for the resolution of this matter. Even if emotional damages can be recovered for violations of the automatic stay, the debtors presented insufficient evidence that as a result of GCB Properties III, Ltd.'s violation of the automatic stay the debtors

25

suffered more than "fleeting and inconsequential distress, embarrassment, humiliation, and annoyance." *In re Hedetneimi*, 297 B.R. 837, 842 (Bankr. M.D. Fla. 2003). *See Cousins*, 404 B.R. at 290-91 (collecting cases).

### *THE DEBTORS ARE NOT ENTITLED TO PUNITIVE DAMAGES*

A party injured by a willful violation of the stay may recover punitive damages in appropriate circumstances; the debtor must show that the "creditor's conduct was 'egregious, vindictive, or intentionally malicious.' " *In re Bilfield*, 494 B.R. at 304 (quoting *In re Baer*, 2012 WL 2368698, at *10). *See also Weary v. Poteat*, 627 F. App'x 475, 477 (6th Cir. 2015) (quoting the bankruptcy court transcript at pages 15-16) ("[t]his, frankly, is the most egregious automatic stay case that I've heard since I've been on the bench and I've been on the bench a long time"). While proof of an overt wrongful intent is not required, it must be shown that "the creditor acted in bad faith or otherwise undertook its actions in reckless disregard of the law." *Bivens*, 324 B.R. at 42. An award of punitive damages is within the bankruptcy court's discretion where actual damages are an insufficient deterrent to further violations. *See Archer*, 853 F.2d at 500.

The Court declines to award punitive damages. Imposing punitive damages on a creditor "is not an action to be taken lightly." *Bivens*, 324 B.R. at 42. The creditor's conduct in this case, although willful, does not appear to have been

26

egregious, vindictive, or intentionally malicious. Instead, the creditor's violations of the automatic stay appear to have resulted from either sloppiness or a breakdown of internal systems meant to prevent such mistakes. For these reasons, the Court believes that the award of actual damages is sufficient to deter future violations of the automatic stay. *See Archer*, 853 F.2d at 500.

BEST PRACTICES

Finally, the Court makes this additional observation, which might fall under the category of "best practices," should any debtor's attorney be faced with a similar situation in the future. In a situation like the present case, when debtors are behind on their rent payments, have received notices to vacate premises, and express that their inability to pay rent is the primary motivating factor for filing for bankruptcy, it is incumbent on the debtor's attorney to take the initiative in promptly notifying the affected creditor of the debtors' bankruptcy filing. Had the debtors' attorney promptly sent a fax, text message, email, or made a phone call to either Samantha Simmons or Karen Farrell, and included the debtors' bankruptcy case number and date of filing, it is possible that the debtors would never have received the improper contacts from the creditor. For example, if the creditor was communicating with the debtors via email, then the debtors' attorney could have responded to the creditor via email and advised the creditor that collection actions

27

must cease immediately because of the pending bankruptcy. Finally, in the event a creditor continued improperly contacting a debtor, evidence that a debtor's attorney contacted the creditor would provide compelling evidence of willfulness.

A bankruptcy filing is a stressful and emotional event for individual debtors. Part of why debtors pay for a skilled bankruptcy professional is so that the attorney can handle the critical task of notifying creditors who are likely to take imminent action against the debtor or who continue to contact the debtor after the petition is filed. As this case unfortunately demonstrates, debtors may be too embarrassed or simply not sufficiently steeped in legal formalities to effectively tell a creditor on their own that a bankruptcy case has been filed. In making this observation, however, the Court hastens to say that this observation played no part in the Court's analysis of the debtors' claim for damages, including attorney's fees, under section 362(k).

## CONCLUSION

For the reasons stated above, the Court orders GCB Properties III, Ltd. to pay the debtors attorney's fees in the amount of $1,680, but denies the debtors' request to award noneconomic and punitive damages.

IT IS SO ORDERED.